## FORSYTH ET AL. v. AMERICAN MAIZE PRODUCTS COMPANY ET AL.

No. 8,419.   Filed April 16, 1915.   Rehearing denied June 24, 1915. Transfer denied October 14, 1915.]

1.  PARTIES.—*Intervention.*—Where one, not a necessary party under the statute, seeks to intervene, the trial court may exercise its discretion and unless there is a clear abuse of such discretion no error is committed in denying the right to intervene.   p. 637.
2.  PARTIES.—*Intervention.*—*Diligence.*—An intervener must be diligent, and any unreasonable delay after knowledge of the suit will justify the court in refusing to allow the intervention, if he is not a necessary party to a full and complete adjudication of the rights involved, and has shown no satisfactory excuse for the delay.   p. 637.
3.  EASEMENTS.—*Action.*— *Parties.*— *Deeds.*—*Construction.*—Where an intervener's rights in a harbor and plaintiff's easement for a pipe line therein all rest in a grant by deeds from the owners of the adjoining real estate, the court, in passing upon the question of whether intervener is a necessary party, must consider all the deeds for the purpose of determining the rights of the parties and ascertaining whether they convey inconsistent privileges, or whether the several rights granted may coexist without any necessary conflict.   p. 638.
4.  EASEMENTS.—*Action.*—*Parties.*—*Privilege to Dredge Harbor.*— *Easement to Extend Pipe Line.*—*Intervention.*—Where plaintiff sued to enjoin an interference with its right to extend a pipe line which it maintained under the bed of a harbor, and it appeared that dredging privileges belonging to one seeking to intervene imposed no obligation, except in relation to the preservation and protection of the harbor in the event the work was undertaken, and that in the event such dredging were undertaken that the pipe line could be lowered so as not to interfere, that neither the public nor the intervener's privileges were affected by the pres-

ence of the pipes, there was no necessary conflict between plaintiff's easement and intervener's privileges, and, in the absence of anything to show that intervener's rights could in any way be affected by the decree, the petition to intervene was properly denied.   p. 638.

5.   APPEAL.—*Review.—Harmless Error.—Striking Out Petition of Intervener.*—Error, if any, in striking out a petition to intervene, was harmless, where it appeared that petitioner was not a necessary party and had no absolute right to intervene.   p. 639.

From Lake Superior Court; *Charles W. Hanley,* Special Judge.

Action by the American Maize Products Company against Charles B. Shedd and others, in which Oliver O. Forsyth and others filed petition to intervene. From a judgment denying the right to intervene, petitioners appeal. *Affirmed.*

*John H. Gillett,* for appellants.

*Peter Crumpacker, Fred C. Crumpacker* and *C. B. Tinkham,* for appellees.

FELT, J.—This is an appeal from a judgment denying appellants the right to intervene in the suit of American Maize Products Company against Charles B. Shedd, *et al.,* in the Lake Superior Court. The defendants in that suit are appellants in *Shedd* v. *American Maize Products Co.* (1915), 60 Ind. App. ——, 108 N. E. 610, which case has been considered and determined in connection with this appeal. The principal facts fully appear in the opinion in that case and need not be repeated here.

It appears that on the trial of the case of *American Maize Products Company* v. *Shedd, et al.,* the hearing of evidence was completed on March 25, 1911, when the case was taken under advisement by the trial court; that in October, 1911, argument was heard on the special finding of facts and the case was continued to November 17, 1911, for further argument on the findings and to fully settle and determine the facts that should be found. At this time the court announced its finding in favor of the plaintiff, the American Maize Products Company. Appellants on the same day

presented their petition and prayed leave to intervene. The court allowed the petition to be filed and afterwards on appellee's motion struck the same from the files and denied appellants the right to intervene. On the same day, and subsequent to the ruling on appellants' petition to intervene, the court filed its special finding of facts and stated its conclusions of law thereon in favor of the plaintiff in that suit, the appellee in this appeal.

The assignments of error present the question of appellants' right to intervene. The petition is based on certain rights to a harbor and the privilege of dredging in the space between the two piers as shown by the finding of facts in *Shedd* v. *American Maize Products Co., supra.* It is shown that the deeds granting such rights were executed long before the Shedds granted appellee the easement for the pipe line into Lake Michigan, and that the same were duly recorded.

The petition sets out in detail the facts which show the arrangement for the harbor, the right to dredge, the work previously done in erecting piers and in dredging, the fouling of the water and the laying of the pipes during the pendency of the litigation under the protection of the temporary injunction granted by the court. In substance the petition charges an invasion of appellants' rights by (1) an interference with their right of dredging, (2) a destruction of their right of fishing, and (3) an unreasonable fouling of the water. The petition shows the ownership of the land adjacent to Wolf River outlet or harbor, the provisions of the deeds granting the harbor privileges and the right to lay the pipe line into Lake Michigan and charges that the maintenance of the pipe line will prevent the petitioners "from proceeding with the dredging and excavation of said harbor". It is not alleged or shown in any way that appellants then intended to dredge the harbor or cause the same to be done at any time in the future, nor is it shown that the pipes can not be lowered so as to be below the

depth to which dredging will be necessary if the work is undertaken.

In the principal case the court expressly finds that the pipes as laid will interfere with dredging the harbor to a depth suitable for lake vessels, but that the same can be lowered at a cost of one dollar per lineal foot. The findings also show that the pipes do not interfere with any present use of the harbor and show that the refuse from the factory of appellee has been emptied into the outlet continuously from the beginning of operations in 1907, and that the laying of the pipes in no way increases the detrimental effect of such refuse on the water. It also shows that in 1910, a year before appellants sought to intervene, appellee had constructed septic tanks at a cost of $25,000 to precipitate the solids and avoid the pollution of the water. The findings show pollution of the water but do not show that the pollution is due to the pipes, but do show that the refuse was emptied into Wolf River outlet before the pipes were extended into the water, and after they were laid it passed through the pipes into the water.

The original suit was brought to restrain the defendants in that action from interfering with the laying of the pipes. The case had been on the docket of the trial court for over two years when appellants sought to intervene. They must have known all the time the effect of refuse upon the water in the harbor. Where one seeks to intervene, who

1. is not a necessary party under our statute, the trial court may exercise its discretion and unless there is a clear abuse of such discretion no error is committed in denying the right to intervene. An intervener must be diligent and any unreasonable delay after knowledge

2. of the suit will justify the court in refusing to allow him to intervene, where no satisfactory excuse is shown for the delay and the intervener is not a necessary party to a full and complete adjudication of the rights involved in the controversy. §273 Burns 1914, §272 R. S.

1881; *Pottlitzer* v. *Citizens Trust Co.* (1915), 60 Ind. App. ——, 108 N. E. 36; *Smith* v. *Gale* (1892), 144 U. S. 509, 12 Sup. Ct. 674, 36 L. Ed. 521; *Larue* v. *American Diesel Engine Co.* (1911), 176 Ind. 609, 614, 96 N. E. 772; *Fischer* v. *Holmes* (1890), 123 Ind. 525, 24 N. E. 377; *Matter of Reisenberg* (1908), 208 U. S. 92, 111, 28 Sup. Ct. 219, 52 L. Ed. 403.

3. Appellants' rights in the harbor and appellee's easement for a pipe line all rest in grant by deeds from the owners of the real estate adjoining Wolf River outlet. These instruments must all be considered in determining the rights of the parties and in ascertaining whether they convey inconsistent privileges or whether the several rights granted may coexist without any necessary conflict. *Roush* v. *Roush* (1900), 154 Ind. 562, 570, 55 N. E. 1017; *Law* v. *Streeter* (1889), 66 N. H. 36, 20 Atl. 247, 9 L. R. A. 271.

4. The harbor privileges granted appellants and the public are not now affected by the easement or the presence of pipes two and one-half feet below the bed of the harbor. The right to dredge is given appellants but the deeds fix no time within which such work must be begun or completed. It is a mere privilege with no obligation attached, unless the work is undertaken, in which event certain conditions are stated relating to the protection and preservation of the harbor. The easement for the pipe line is not necessarily inconsistent with the right to dredge. Under present conditions they coexist without conflict or injury to any one. If the work of dredging the harbor so as to make it suitable for lake vessels is undertaken, the pipes may be lowered so that the two rights may still coexist without necessary conflict. *Peck* v. *City of Michigan City* (1898), 149 Ind. 670, 49 N. E. 800; *Law* v. *Streeter, supra; Grafton* v. *Moir* (1892), 130 N. Y. 465, 29 N. E. 974, 27 Am. St. 533; *Welch* v. *Wilcox* (1869), 101 Mass. 162, 100 Am. Dec. 113, note 3; *Gerrish* v. *Shattuck* (1881), 132 Mass.

235; *Pomeroy* v. *Salt Co.* (1882), 37 Ohio St. 520; 14 Cyc. 1208. As supporting the foregoing proposition by analogy see, *Town of Cicero* v. *Lake Erie, etc., R. Co.* (1913), 52 Ind. App. 298, 312, 97 N. E. 389, and cases cited. Appellants have cited *Northern Indiana Land Co.* v. *Brown* (1914), 182 Ind. 438, 106 N. E. 706, as sustaining their claim to the right to intervene. The facts of that case are not similar to those of the case at bar. Certain petitioners were asking for the construction of a levee. The intervener showed by his petition that the levee if constructed as prayed for would cause an immediate and permanent damage to his real estate. In the case at bar appellants' petition does not show that the denial of the injunction against the Shedds would in any way affect them or their property differently from the granting of the injunction. In either event they were left in the identical situation they occupied before asking to intervene. No new, different or additional injury, if any, would result to their property and they lost no right or remedy by the decree entered. The question involved was the right to restrain the Shedds from interfering with the laying of the pipes east of their pier. Appellants had not interfered, there was no need of restraining them and the granting of the order as already shown, did not affect them or their property.

Appellants insist on a reversal for the reason that their petition was filed and then stricken out on motion of appellee. They insist that this was not the proper practice and that if the petition was insufficient the only way to raise the question was by demurrer. In the view we take of the case appellants were not necessary parties and had no absolute right to intervene. Independent of the question of practice, therefore, the court committed no reversible error in denying them the right to intervene, which was the effect of sustaining appellee's motion to strike the petition from the files. For the foregoing reasons and those stated in *Shedd* v. *American Maize Products Co.,*

*supra,* the judgment is affirmed. Hottel, C. J., Caldwell, Ibach, Moran and Shea, JJ., concur.

NOTE.—Reported in 108 N. E. 622. As to who may become interveners, see 15 Am. Dec. 162. See, also, under (1) 31 Cyc. 519; (2) 31. Cyc. 519, 520; (4) 31 Cyc. 514; (5) 31 Cyc. 669.