[1] This is an original proceeding in prohibition filed by John Simons, as relator, against Honorable Sam Wilcox, Judge of Division No. 1 of the Circuit Court of Buchanan County, Missouri. Our preliminary writ issued, to which respondent made return. The relator moved for judgment upon the pleadings. We, therefore, look to the pleadings for the facts. They are: On November 17, 1947, relator filed a petition in the Circuit Court of Buchanan County, Missouri, against Fred J. Mettlemeyer, in which he alleged that defendant had listed certain real estate with relator, a real estate broker, for sale; that relator procured a buyer ready, able and willing to purchase the property at the price defendant had listed it with relator and that said Mettlemeyer had refused to sell the property on the terms proposed and, as a result of defendant's refusal to sell, relator had earned his right to a commission and asked judgment against Mettlemeyer in the sum of $1875.
[2] That cause was numbered 72,107 by the Circuit Clerk and fell to Division No. 1 of said court, presided over by respondent herein. On October 19, 1948, said cause went to trial before respondent and a jury, resulting in a verdict and judgment in favor of relator and against defendant, Mettlemeyer, for the amount prayed for $1875. On October 27, 1948, defendant filed his motion for new trial, which was taken up by respondent on November 19, 1948, and overruled. On November 23, 1948, defendant filed notice of appeal to this court. Thereafter, on January 18, 1948, said defendant filed in the Circuit Court of Buchanan County, a withdrawal of his appeal, no transcript having been filed in this court. On the same day, January 18, 1949, relator and defendant, Mettlemeyer, entered into a stipulation of settlement which was on January 18, 1949, filed with the Circuit Clerk. This stipulation recited that relator had recovered a judgment against Mettlemeyer for $1875; that he had taken an appeal from said judgment to this court; that defendant would withdraw his appeal in said case No. 72,107 in accordance with Rule 1.17 of the Supreme Court and pay and pay the sum of $1500 and costs taxed in said case, and that relator would accept said sum of $1500 and the payment of said costs in full and complete settlement and compromise of said case No. 72,107, and would enter upon the margin of the record of the judgment in said case full satisfaction thereof.
[3] On the same day that this stipulation for settlement was filed with the Circuit Clerk and the sum of $1500 paid to him, and within an hour thereafter, E. N. Peterson, a stranger to the record in said No. 72,107, filed his motion styled "Motion to Intervene, for Declaratory Judgment and for Temporary Restraining Order." A copy of this motion was served upon relator. In it Peterson recited that relator had recovered judgment against defendant, Mettlemeyer, *Page 394 
for the sum of $1875; that by virtue of the stipulation between relator and Mettlemeyer, an appeal to this court had been dismissed, so that Division No. 1 of the Circuit Court of Buchanan County, Missouri, then had jurisdiction therein; that movant, Peterson, had an equity of an undivided one-half interest in the judgment heretofore rendered in favor of relator against Mettlemeyer; that while said case No. 72,107 was originally filed in the name of relator, as plaintiff, actually, movant should be a party plaintiff therein because movant, in equity, is entitled to be adjudged the owner of an undivided one-half interest in said judgment by virtue of a contract heretofore entered into between relator and movant, which contract was to the effect that movant and relator "were to share equally in any real estate commission thereafter to be paid or become due from Fred J. Mettlemeyer to John Simons; that the consideration of this contract was the performance of services by movant, which services he did perform."
[4] Movant, Peterson, further alleged that satisfaction of said judgment, under the stipulation between relator and defendant, Mettlemeyer, was to be made either between said Simons and Mettlemeyer, or through payment of funds through the office of the Circuit Clerk, and that movant was in danger that said funds would be distributed and dissipated unless an order was made by respondent enjoining relator, defendant, Mettlemeyer, and the Circuit Clerk from distributing said funds; that movant had no adequate remedy at law. Movant's prayer was (1) that respondent make an order permitting movant to intervene as a party plaintiff: (2) that respondent hear evidence and enter a declaratory judgment fixing the rights of movant in and to the proceeds of the judgment entered, and decree that Simons and movant are each entitled to an undivided one-half interest in said judgment, and (3) that the court make an order restraining Simons, Mettlemeyer and the Circuit Clerk from entering satisfaction of the original judgment, or from distributing any proceeds due under that judgment.
[5] On January 19, 1949, respondent issued a temporary restraining order directing the Clerk not to distribute any of the money in his hands in said case No. 72,107 until further order of the court.
[6] On January 25, 1949, Whitney W. Potter, who was, at that time, the attorney of record for relator, filed his motion to establish an attorney's lien on the proceeds of the judgment in the hands of the Circuit Clerk, which motion was by respondent sustained in the sum of $500, and the Clerk directed to retain the balance until further order of the court.
[7] On said January 25, 1949, relator filed his motion to strike the motion of Peterson to intervene. On February 14, 1949, the motion of Peterson to intervene and the motion of relator to strike were presented to respondent who, on the same day, overruled relator's motion to strike and sustained the motion of Peterson to intervene.
[8] Relator alleges that, unless prohibited by this court, respondent will, in excess of his jurisdiction, and without jurisdiction, proceed with the motion of Peterson to intervene and for declaratory judgment, and will proceed to compel relator to answer and plead to said motion and, if relator fails to plead, will proceed to enter judgment by default against relator, or, if relator does plead and answer said motion of Peterson, that respondent, in excess of his jurisdiction, and without jurisdiction, will force relator to submit to a trial of said cause before respondent, and will, unless prohibited by this court, render judgment between the parties to said motion of Peterson and continue to hold and impound the money rightfully belonging to relator, and that relator is without any adequate remedy at law.
[9] It is relator's contention that since case No. 72,107 had been tried, judgment rendered, the motion for new trial overruled and an appeal taken and later withdrawn, the cause was in the trial court exactly as if no appeal had ever been taken and, inasmuch as more than 30 days had elapsed since the overruling of the motion for a new trial, the judgment became final and respondent had no control over the same. *Page 395 
[10] Under Rule 3.24 of the Supreme Court, a judgment becomes final at the expiration of 30 days after its entry except when a timely motion for new trial is filed, in which event the judgment becomes final at the expiration of 90 days after the filing of such motion or, if such motion is passed on at an earlier date, then at the date of the disposition of said motion. The motion of Peterson to intervene was filed on January 18, 1949, 60 days after the motion for new trial had been passed on by respondent.
[11] Rule 3.25 of that court provides that the trial court retains control over judgments during the 30 day period after entry of judgment and may re-open, correct, amend or modify its judgment for good cause within that time. This court held in State ex rel. Templeton v. Seehorn, Mo.App., 208 S.W.2d 789, 792, that, where a motion for a new trial had been overruled and no appeal taken, and more than 30 days had elapsed since the entry of the judgment, the court had then lost its power and authority to change or modify the judgment; that "terms of court having been abolished by the present Code, the lapse of the 30 day period referred to had the same effect as the lapse of the term under the old Code." Rule 1.17 of the Supreme Court, which permits an appellant to withdraw his appeal in the trial court at any time prior to the filing of the transcript on appeal in the appellate court, does not extend the time within which the judgment becomes final, as counsel for respondent contends.
[12] Relator asserts that, at the time the motion to intervene was filed, the original suit between relator and Mettlemeyer was then at an end and there was no action pending before respondent as trial judge in which Peterson could intervene; that not only had the case proceeded to final judgment but the original parties had entered into a stipulation of settlement leaving nothing to be done except for relator to enter upon the margin of the record of the judgment full satisfaction.
[13] On the other hand, it is claimed on behalf of respondent that the following provision of Section 21 of the New Code, Mo. R.S.A. § 847.21, applies: "(a) Upon timely application anyone shall be permitted to intervene in an action: (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof."
[14] Our Supreme Court in the case of Zeitinger v. Hargadine-McKittrick Dry Goods Co., 298 Mo. 461, 250 S.W. 913, traces the origin of the right of intervention, which was unknown to the common law courts and then uses this language, 298 Mo. loc. cit. 471, 250 S.W. loc. cit. 916: "The very nature of an `intervention' which we have defined as in the civil law to be an action by which a third party becomes a party in a suit pending between others (Smith v. Gale, 144 U.S. 509, 12 S.Ct. 674, 36 L.Ed. 521; In re Ghio's Estate, 157 Cal. 552, 108 P. 516, 37 L.R.A., N.S., 549, 137 Am.St.Rep. 145, 20 R.C.L. § 20, P. 282), requires by its express terms timeliness of action on the part of the intervener. Otherwise the words authorizing that his action be brought in a suit `pending between others' would mean nothing. A suit cannot, within a reasonable interpretation of the words as thus used, be said to be pending when the issues have been judicially determined, or, in short, a judgment has been rendered therein."
[15] In Roberts v. Metropolitan Life Ins. Co., 7 Cir., 94 F.2d 277, at page 281, appears the following language: "the contested issue is whether the court had jurisdiction to authorize appellant to intervene. As before stated, the petition for leave so to do was filed June 2, 1937, while the final decree in the interpleader action was entered March 29, 1937. It seems to be the position of appellant that the fund having been retained in the custody of the court, that jurisdiction is reserved until the fund is finally distributed. Many authorities are cited and quoted from, none of which, in our opinion, sustains such contention. True, courts of equity have been very liberal in permitting interested persons, to intervene and become parties so that complete *Page 396 
justice may be done. We know of no authority, however, which permits a person to become a party after a matter has been litigated, a final decree entered, and the term of court adjourned."
[16] To the same effect are the cases of Watkins v. Donnell, 189 Mo.App. 617, 175 S.W. 280 and Morton v. Supreme Council, 100 Mo.App. 76, 73 S.W. 259.
[17] In the late case of City of St. Louis v. Silk, Mo.App.,199 S.W.2d 23, at pages 27 and 28, the St. Louis Court of Appeals uses the following language: "The power to pass upon applications to intervene after final judgment is not among those reserved to the trial court by the Code."
[18] Respondent relies upon the case of St. ex rel. Duggan v. Kirkwood, Mo.Sup., 208 S.W.2d 257, 2 A.L.R.2d 216, by our Supreme Court. In that case the application to intervene was filed in a "pending action," six days before the case was set for trial. Obviously, it is not in point here.
[19] In our opinion, the judgment herein had become final and, there being no action then pending before respondent, he had no authority to entertain the motion of Peterson to intervene.
[20] After setting out the above subdivision (a) (3) of Section 21 of the new Code Carr's Mo. Civil Procedure says in Vol. 1. sec. 70, at page 226: "This but continues the prior nonstatutory law, as for example in receiverships." It is likewise our view that money paid to the clerk of the court to satisfy a final judgment, as was done here, does not create or constitute such a fund as will lay the foundation for a stranger to the record to intervene as provided in Section 21 of the new Code. We have been cited to no case which holds otherwise, and extensive search on our part has revealed none. It would seem that what is there contemplated is such a fund as is created by a receivership, partition, mortgage, or arising out of a trust. Monticello Bldg. Corp. v. Monticello Inv. Co., 330 Mo. 1128, 52 S.W.2d 545; Davis v. Austin, 348 Mo. 1094, 156 S.W.2d 903; Young v. Pressgrove, 355 Mo. 204, 195 S.W.2d 516, and State ex rel, Duggan v. Kirkwood, Mo. Sup., 208 S.W.2d 257, 2 A.L.R.2d 216.
[21] After a careful examination of the record in the instant case, we have concluded that respondent Judge acted in excess of his jurisdiction, and that our preliminary rule should be made absolute. It is so ordered.
[22] All concur.